RICHARD VAN NEST GAMBRILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81544. Promulgated October 21, 1938.

*Ben R. Clark, Esq.*, and *Allin H. Pierce, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

## OPINION.

Van Fossan: The first of two major questions presented by the case at bar, is the date to be used for the purpose of fixing the basic valuation in determining the gain or loss to petitioner on the sale of securities which he received as remainderman of a testamentary trust after the death of the life beneficiary.

The second question is the date to be used in determining the period for which these same securities were held by petitioner prior to their sale, within the meaning of the capital gains provisions of the applicable revenue act.[2]

The securities which petitioner received as remainderman, after the death of the life beneficiary, are capable of being divided into two categories, the first being those securities which had come to the trustees as part of the trust *res*, and the second being those securities which were purchased by the trustees with trust funds, subsequent to March 1, 1913, and held by them until delivery to petitioner in 1928.

The statutory provisions governing the basis for the determination of gain or loss are found in section 113 of the Revenue Act of 1928 and those here pertinent are as follows:

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \* \*

---

[2] Sec. 101, Revenue Act of 1928.

(5) PROPERTY TRANSMITTED AT DEATH.—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death;

\*         \*         \*         \*         \*         \*         \*

(b) *Property acquired before March 1, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be:

(1) the cost of such property (or, in the case of such property as is described in subsection (a) (1), (4), (5), or (12) of this section, the basis as therein provided), or

(2) the fair market value of such property as of March 1, 1913,

whichever is greater. In determining the fair market value of stock in a corporation as of March 1, 1913, due regard shall be given to the fair market value of the assets of the corporation as of that date.

As to the first above indicated issue, respondent urges that petitioner's interest under the testamentary trust was a vested interest under the controlling law of New York; (as to the securities which were a part of the original trust *res*) that where property is bequeathed in trust, distribution by the executor of the donee's estate to the trustee constitutes the "distribution to the taxpayer" contemplated by the statute; (as to the securities which were acquired by the trustees with trust funds) that where trustees purchase property with trust funds, and later distribute the property so acquired to the taxpayer, such property is not "acquired by will or intestacy" within the meaning of the above quoted statute.

Even though petitioner's interest under New York law may be a vested interest acquired at the date of testator's death, which was prior to March 1, 1913, and as such brings the matter within the purview of section 113 (b), that section, by its terms, makes section 113 (a) (5) controlling. The date of acquisition therefore is removed from the picture and the date for determining gain or loss is the date prescribed by section 113 (a) (5). Counsel are agreed that the applicable provision of the subsection is the provision covering

"all other cases" and that the basis therefore is "the fair market value of the property at the time of the distribution to the taxpayer."

Respondent concedes that *Ralph W. Harbison*, 26 B. T. A. 896,[3] *Mary Colgate*, 27 B. T. A. 506,[4] *Margaret E. B. Fleming*, 36 B. T. A. 773, are all contrary to the position he takes on the first issue. These cases, together with *Van Nostrand* v. *United States*, 18 Fed. Supp. 295, affd., 94 Fed. (2d) 510, hold that the phrase "the time of distribution to the taxpayer" as used in the statute, means the time when this property was *actually* delivered to or made available for the use of the taxpayer.

However, respondent cites *Jenkins* v. *Smith* (U. S. Dist. Ct., Dist. Conn.), 21 Fed. Supp. 433, as squarely supporting his contentions, and urges that this Board reconsider the entire issue on the basis of the *Jenkins* case and the arguments presented in the brief in the case at bar.

After a careful consideration of respondent's arguments and with due deference to the District Court for the District of Connecticut, we are constrained to adhere to our original position. Nothing is presented which would justify our recantation. We, therefore, hold that the basis to petitioner for the purpose of determining gain or loss on the sale of the securities in question is the fair market value of such securities on May 5, 1928, the date when the corpus of the trust was delivered to petitioner. This was the time of the "distribution to the taxpayer." Cf. *Robert A. Taft, Trustee*, 34 B. T. A. 603; *Bessie C. Williamson*, 34 B. T. A. 924.

Respondent urges that the second issue, being concerned with the capital gains provisions of the statute, is not dependent upon the date used under section 113 for determining the basis for gain or loss and that the securities here involved have been held by petitioner, within the meaning of section 101 of the Revenue Act of 1928, since the respective dates on which they were acquired by the trust estate. In other words, that those securities which were a part of the original trust *res* were "held by the taxpayer" since the death of the testator, and those securities which were acquired by the trustee with trust funds were "held by the taxpayer" since the time of their purchase.

Respondent relies on *McFeely* v. *Commissioner*, 296 U. S. 102, which case directly severs any dependence of section 101 on section 113 for the determination of the holding period.

---

[3] Reversed on another issue, 68 Fed. (2d) 1004; 293 U. S. 144.

[4] Reversed on another issue, mandate C. C. A., 2d Cir., on stipulation to abide by decision in *Bliss* v. *Commissioner*, 68 Fed. (2d) 890; 293 U. S. 144.

In addressing itself to the question presented in the *McFeely* case the Supreme Court, through Justice Roberts, declared that "held" and "acquired" were in effect synonymous, and stated:

\* \* \* In common understanding, to hold property is to own it. In order to own or hold one must acquire. The date of acquisition is, then that from which to compute the duration of ownership or length of holding. Whether under local law title to personal property passes from a decedent to the legatee or next of kin at death subject to a withholding of possession for purposes of administration, or passes to the personal representative for the purposes of administration,—the title of the beneficiary, though derived through the executor, relating back to the date of death,—is for the present purposes immaterial. In either case, the date of acquisition, within the intent of the Revenue Act is the date of death. [Citing *Brewster* v. *Gage*, 280 U. S. 327.]

To determine the application of the *McFeely* case to the case at bar, it is necessary to consider the particular questions involved in the two cases. The *McFeely* case, which is really a consolidation of five cases, is concerned with the administration period between the date of death of the original holder and the date of actual acquisition by the respective taxpayers, and involves, respectively, residuary legatees, the donee of a widow who elected to take against her husband's will, and one taking under intestate laws. The Court states the question "whether property acquired from a decedent through intestacy, or a general bequest, is, within the meaning of the clause [held by the taxpayer for more than two years] held by the taxpayer from the date of decedent's death or from the date of distribution." The case at bar is concerned with the date of acquisition of a remainderman's interest in a trust estate after the death of the life beneficiary. This, we think, presents a distinctly different problem, one not ruled on in the cited case. For this reason we do not deem the *McFeely* case controlling here.

As above noted, respondent contends that the securities which were originally a part of the trust estate were "held by the taxpayer" from the date of the death of the original grantor (1897), and those purchased with trust funds were held from the date of such purchase. This contention was based on *McFeely* v. *Commissioner, supra,* which, as above indicated, we have rejected as controlling in the case at bar.

Petitioner urges that the controlling date is May 5, 1928, the date of delivery of the trust corpus to petitioner. Whether this date or that of March 23, 1928, the date of death of the life beneficiary, is the determinative date it is not necessary in this case to decide. The result is the same whichever be taken. The findings of fact establish that certain securities were sold prior to March 23, 1930, and that others were sold after May 5, 1930. None were sold in the interval between the two dates.

We hold that those securities sold in February 1930 had not been held by the taxpayer for more than two years and were, therefore, not capital assets, while those sold on May 6 and in June 1930 had been held by taxpayer for more than two years and were, therefore, capital assets.

*Decision will be entered under Rule 50.*